# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| RACHEL M. KRAMER and CLAIRE E. KRAMER, | ) ) ) |
| Petitioners/ Counter-Respondents, | ) ) ) |
| v. | ) )   No. 19-cv-3247 ) |
| ROBERT M. KOELLER, individually, and ROBERT M. KOELLER, in his capacity as Successor Trustee of the REVOCABLE TRUST AGREEMENT of BARBARA K. KRAMER a/k/a BARBARA J. KRAMER, | ) ) ) ) ) ) ) ) ) |
| Respondent/ Counter-Petitioner. | ) ) |

## **OPINION**

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Petitioner/Counter Respondents Rachel M. Kramer and Claire E. Kramer's Motion to Dismiss Counterclaims (d/e 22) (Motion). The parties consented to proceed before this Court. Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Reference Order entered February 20, 2020 (d/e 15). For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

Counter-Petitioner Robert M. Koeller is the brother of Barbara Kramer, deceased. Counter-Respondents Rachel M. Kramer and Claire E. Kramer (the Daughters) are the children of the late Barbara Kramer. Barbara Kramer died on November 11, 2018. At the time of her death, Barbara Kramer's Last Will and Testament (Will) named Koeller as Executor. Barbara Kramer also executed a trust agreement entitled "REVOCABLE TRUST AGREEMENT of BARBARA K. KRAMER a/k/a BARBARA J. KRAMER" on October 8, 2012 (Trust). The Trust named Barbara Kramer as Trustee and Koeller as successor Trustee. The Daughters filed this action in state court to set aside the Will and Trust. Koeller removed the action to this Court. Koeller has filed an Answer, Affirmative Defenses, and Counterclaims. Respondent's Answer to Petitioner's Amended Complaint (d/e 17) (Answer); Respondent's Affirmative Defenses (d/e 18) (Affirmative Defenses); Respondent's Counterclaims (d/e 19) (Counterclaims). Koeller filed the Answer, Affirmative Defenses, and Counterclaims both individually and as successor Trustee of the Trust, The Daughters responded with the pending Motion to dismiss the Counterclaims.

## STATEMENT OF FACTS

For purposes of the Motion, the Court assumes the well-pleaded factual allegations in the Counterclaims are true and will view those allegations in the light most favorable to Koeller.  See e.g., Bogie v. Rosenberg, 705 F.3d 603, 605 (7th Cir. 2013).  The Court can also take notice of matters of public record and documents attached to the motion to dismiss that are referenced in the Counterclaims that are central to the claims.  See  Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994); Wright v. Associated Ins. Cos. Inc., 1244, 1248 (7th Cir. 1994).  In this case, the Court takes notice of the fact that Barbara Kramer executed a deed in 2012 conveying her home (Residence) into the Trust, which deed was recorded in the Macoupin County, Illinois, Recorder's Office; Barbara Kramer died on November 11, 2018; and her Will was filed with the Macoupin County, Illinois Circuit Court, but no probate proceeding was ever opened for her.

Koeller alleges in the Counterclaims that he is the Executor of Barbara Kramer's estate (Estate).  He alleges that when Barbara Kramer died, the Daughters handled the disposition of Barbara Kramer's remains (Remains).  Koeller alleges that as Executor he had the first priority right to handle the disposition of the Remains, pursuant to the Illinois Disposition of

Remains Act (Act), 755 ILCS 65/1 et seq. He alleges the Remains were cremated. He alleges that some 15 months after Barbara Kramer's death, the Remains may still be disposed of in accordance with Barbara Kramer's directions. He now asserts his right to handle the disposition of the Remains. He asks the Court to resolve whether he or the Daughters should control the completion of the disposition of the Remains. He also asserts a claim for damages. (Counterclaim I).

Koeller asserts a claim for intentional infliction of emotional distress. Koeller alleges that Rachel Kramer made all the arrangements for disposition of the Remains without Koeller's prior knowledge, consultation, or approval. He alleges that Rachel Kramer made the arrangements to meet the desires of the Daughters for disposition of the Remains but not the desires of Barbara Kramer for disposition of her Remains that she had told to Koeller. He alleges that the Daughters took the Remains out of state in violation of law. Koeller alleges the disposition of the Remains violated Koeller's right to control the disposition as Executor of the Estate. Koeller alleges that the Daughters engaged in this conduct maliciously and intentionally or recklessly to inflict emotional distress on him. He seeks damages for his emotional distress. (Counterclaim II).

Koeller alleges that the Residence was sold in July 2019, roughly eight months after Barbara Kramer died in November 2018. Koeller alleges that for the eight months from Barbara Kramer's death until the Trust sold the Residence in July 2019, the Daughters entered the Residence several times and removed personal property from the Residence. Koeller alleges that the Daughters took papers without authority. He alleges that the wrongful taking of these papers interfered with his ability to execute his duties as Executor and successor Trustee. Based on these allegations, he alleges a claim for trespass to land. (Counterclaim III).

Koeller also alleges a claim for trespass to chattels. (Counterclaim IV). The Will contained two specific bequests; a piano to Claire Kramer and two rings to a niece Kristen Koeller Sneider. Motion, Exhibit A, Will. The Will provided that the remaining personal property would be divided equally between the Daughters with the assistance of the Executor. The Will stated that Barbara Kramer might leave a memorandum identifying items that she wished to go to a specific person to be administered by the Executor. Koeller does not allege that Barbara Kramer left such a memorandum. Koeller alleges that the Daughters trespassed onto the Residence and took personal property, including financial records. Koeller does not allege that the Daughters took the rings given to Sneider. Koeller

seeks damages for these wrongful trespasses.  Koeller alleges damages because the Daughters took financial documents needed to administer the Estate and Trust.

The Daughters now move to dismiss the Counterclaims.

## ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).  The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2) & (d)(1).  The Court may also consider matters of public record in determining whether a complaint states a claim.  Henson, 29 F.3d at 284.  The Court may also consider documents that are attached to the Motion, referenced in the claim, and central to the claim.  Wright, 29 F.3d at 1244.  While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible

on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests. George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007). Dismissal under Rule 12(b)(6) is appropriate when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC, 499 F.3d 663, 667 (7th Cir. 2007). The Court addresses each Counterclaim separately.

Counterclaim I

Koeller states a claim for a determination of whether he or the Daughters are the proper person(s) to complete the disposition of the Remains. The Act authorizes a cause of action to resolve such disputes. 755 ILCS 65/50.[1]

Koeller also alleges a claim for damages in Counterclaim I for violation of the Act. The Act does not expressly authorize a private cause of action for damages. The parties have not addressed whether such a private cause of action exists. See Metzger v. DaRosa, 209 Ill.2d 30, 36-40, 805 N.E.2d 1165, 1168-71 (Ill. 2003) (discussing the Illinois law regarding whether a statute contains an implied private right of action).

---

[1] Koeller's 15-month delay in bringing the action raises questions about estoppel and laches. See Estate of Sperry, 2017 IL App (3d) 150703 ¶ 19, 91 N.E.3d 903, 949 (Ill.App.3rd Dist. 2017). Such matters, however, would be affirmative defenses and not a basis to dismiss Counterclaim I.

The parties have not addressed this issue and the Court will not do so any further at this juncture.  Regardless, Koeller states a claim for a judicial determination of whether he or the Daughters should determine the final disposition of the Remains.

The Daughters argue that Koeller fails to state a claim under the Act because Koeller did not open a probate proceeding.  They argue that he is not really the Executor of the Estate unless and until he opens a probate proceeding and the probate court appoints him as executor and issues him letters testamentary.  See 755 ILCS 5/6-2, 5/6-4, 5/6-8.  Because he is not the Executor, the Daughters argue, he has no standing under the Act to claim a right to decide the disposition of the Remains.

The Act identifies in order of priority the individuals who are entitled to determine the disposition of a decedent's remains.  The executor of the decedent's estate has second priority after an individual specifically named by the decedent in her will.  The children of the decedent have fourth priority.  755 ILCS 65/5.  The Act does not define the term executor.  The general definition of "executor" is "a person appointed by a testator to carry out the directions and requests in his will, and to dispose of the property according to his testamentary provisions after his decease." Black's Law Dictionary (4th ed.1968) at 680.  The general definition does not require

opening a probate estate. The Illinois Probate Act authorizes an executor to take certain actions without opening a probate proceeding:

> § 6-14. Power of executor before issuance of letters. Before issuance of letters to an executor his power extends to the carrying out of any gift of the decedent's body or any part thereof, to the burial of the decedent, the payment of necessary funeral charges and the preservation of the estate; but if the will is not admitted to probate, the executor is not liable as an executor of his own wrong, except for his refusal to deliver the estate to the person authorized by law to receive it or for waste or misapplication of the estate.

755 ILCS 5/6-14. Illinois law, therefore, provides that a person so designated in a will is the executor upon the death of a testator. Koeller became the Executor when Barbara Kramer died pursuant to the terms of the Will. Section 6-14 of the Illinois Probate Act, quoted above, further authorized Koeller to carry out the burial of the Remains and payment of burial expenses. In light of Koeller's express authority under § 6-14 of the Probate Act without opening a probate proceeding, the Court finds that Koeller is the Executor of the Estate for purposes of the Act. He has standing to bring the action under 755 ILCS 65/50. Counterclaim I states a claim.

Counterclaim II

The Daughters only challenge Counterclaim II on the grounds that Koeller had no claim or standing because he was not really the Executor of

the Estate when they handled the disposition of the Remains. For the reasons set forth above, Koeller was the Executor. The Court denies the Daughter's motion to dismiss Counterclaim II on these grounds.

Counterclaim III

Counterclaim III asserts a claim for trespass to lands. A person may be liable if she intentionally or negligently entered onto the property of another:

> We may summarize the Restatement (Second) of Torts on this subject as follows: (1) One is subject to liability for an intentional intrusion on land irrespective of whether he causes harm to a legally protected interest. (Restatement (Second) of Torts sec. 158, at 277 (1965).) (2) One is liable for negligent or reckless intrusion on land if he thereby causes harm to a legally protected interest. (Restatement (Second) of Torts sec. 165, at 300 (1965).) (3) And one is not liable for an unintentional nonnegligent intrusion on land even though the entry causes harm to a legally protected interest. (Restatement (Second) of Torts sec. 166, at 304 (1965).) Under section 158 of the Restatement (intentional intrusion), or section 165 (negligent or reckless intrusion), a person is liable not only for his own entry but also if he causes a thing or third person to enter the land of another.

Dial v. City of O'Fallon, 81 Ill. 2d 548, 553–54, 411 N.E.2d 217, 220 (1980). Furthermore, a person is liable for intentional entry on the property of others regardless of good faith:

> The defendant is liable for an intentional entry although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong. Thus he is a trespasser although he believes that the land is his own * * *.

> The interest of the landowner is protected at the expense of those who make innocent mistakes.

Lyons v. State Farm Fire & Cas. Co., 349 Ill. App. 3d 404, 410, 811 N.E.2d 718, 724 (2004) (quoting W. Prosser, Torts § 13, at 74 (4th ed.1971)). A claim for intentional trespass to lands does not require proof of injury. Dial, 411 N.E.2d at 220.

Koeller alleges that the Daughters intentionally entered the Residence without legal authority after Barbara Kramer's death and before the Trust sold the Residence in July 2019. Counterclaim III ¶¶ 14-16. At that time the Residence was owned by the Trust and Koeller was the successor Trustee. Koeller states a claim in Counterclaim III.

The Daughters argue the following:

> An action for trespass to land requires that the alleged trespasser had knowledge that his entry onto the property was prohibited and that the defendant acted with knowledge that his conduct would, to a substantial degree of certainty, result in an intrusion. See *NutraSweet Company v. X-L Engineering Corp.* 926 F. Supp. 767 (N.D. Ill. 1996). The elements of a claim for trespass to land require allegations of fact that either the owner had a posted notice not to trespass on the property or had given direct instructions to individuals not to be on or to otherwise remove themselves from the premises. These allegations resolve the need to establish the trespasser had prior knowledge that his act would amount to an intrusion. See *Dial v. City of O'Fallon* 81 Ill.2d 548, 411 N.E. 2d 217, 44 Ill. Dec. 248 (1980).

Motion, at 8-9.  The Court has carefully reviewed the NutraSweet case and the Dial cases.  Neither supports the proposition for which the Daughters cited each case.

The Court in NutraSweet held a person is liable for a trespass if that person has "knowledge that his conduct will, to a substantial degree of certainty, result in ... intrusion." NutraSweet, 926 F.Supp, at 771 (quoting Freese v. Buoy, 217 Ill.App.3d 234, 244, 160 Ill.Dec. 222, 576 N.E.2d 1176 (Ill.App.Ct.1991)).  The NutraSweet case does not state that the defendant must know that intrusion onto the property was prohibited; he only needed to know that his actions would, to a substantial degree of certainty, result in an intrusion onto the property. In this case, Koeller fairly alleges that the Daughters intentionally entered the Residence without authority.  The Daughters therefore knew that they were intruding the Residence.

The Dial case says nothing about posting signs.  The Daughters cite no other authority for this proposition.

The Daughters correctly state that the Dial case requires proof of an intentional intrusion under the first of the three options quoted above, citing the Restatement (Second) of Torts § 158.  The Daughters' acts were intentional if they meant to enter the Residence.  An unintentional entry into the Residence would mean that the Daughters did not intend to enter the

Residence, but they accidently tripped and fell or were forced into the Residence by some external force. See Restatement (Second) of Torts, § 166, comment b. Koeller alleges that the Daughters intended to enter the Residence. He alleges an intentional act. He states a claim in Counterclaim III.

Counterclaim IV

Koeller alleges in Counterclaim IV that the Daughters wrongfully took personal property from the Residence, which property was part of the Estate. To state a claim for trespass to chattels, Koeller must allege an intentional interference with personal property. Koeller must also allege damages from the interference. See Restatement (Second) of Torts § 218. Koeller alleges the Daughters took property that was part of the Estate without Koeller's permission. He alleges injury because the Daughters took financial papers needed to prepare tax returns for the Estate. As such, he states a claim. The Daughters argue that the allegations of injury are too vague. The Court disagrees. Read favorably to Koeller, the Counterclaim alleges that he needed financial papers that belonged to the Estate to administer the Estate. He alleges injury because he had to spend additional time to prepare the tax returns. Counterclaim IV ¶ 27. This allegation of injury is sufficient to state a claim for purposes of the Motion.

THEREFORE, IT IS ORDERED that Plaintiffs/Counter Defendants Rachel M. Kramer and Claire E. Kramer's Motion to Dismiss Counterclaims (d/e 22) is DENIED.  Plaintiffs/Counter Defendants are directed to answer the Counterclaim (d/e 22), by May 29, 2020.

ENTER:   May 7, 2020

*s/ Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE